UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MITCHELL NELSON, | Case No. C18-251 RSM |
| Plaintiff, | ORDER GRANTING MOTION FOR SUMMARY JUDGMENT |
| v. | |
| BOEING INC., *et al.*, | |
| Defendants. | |

This matter comes before the Court on Defendant Boeing Company's Motion for Summary Judgment. Dkt. #30. Plaintiff Mitchell Nelson opposes. Dkt. #35. Neither party has requested oral argument. For the reasons stated below, the Court GRANTS Boeing's Motion and dismisses all of Mr. Nelson's claims against all Defendants.

## I. BACKGROUND

Plaintiff Mitchell Nelson was hired by Boeing as an Interior Fabrication and Assembly Mechanic C in 2011 and is still in the same position today. Dkt. #31-1 ("Nelson Dep.") at 61:9-24; 270:1-2; *see also* Dkt #31-2 at 2 (establishing job title); Dkt #31-6 at 2 (establishing starting year). In this position, Mr. Nelson is "responsible for assembling interior components of aircrafts… [such as] the housing for the stow bins where people put their luggage on the 777

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 1

airplane." Dkt. #73 ("Cummins Decl."), ¶ 5. Mr. Nelson's compensation has never decreased. Nelson Dep. at 270:3-8.

Mr. Nelson alleges that he was sexually assaulted by a female coworker named Michele Hooper in the first week of November 2016. He first reported this incident to Boeing HR on June 12, 2017, with further detail on June 13, 2017. *See* Dkt. #31-3 at 2 and Dkt. #31-5 at 3. Mr. Nelson told HR in an email that while he was in the employee break area Ms. Hooper "walked up to Mr. Nelson grabbed both of his nipples, pinched them extremely hard and then proceeded to twist them for 3 to 4 seconds." Dkt. #31-5 at 3. She then, according to Mr. Nelson, "made a nasty face and said 'how do you like it" twice. *Id*. She allegedly turned to employee Norman Zyskowski who was sitting next to the two of them and said "it's your turn," to which he replied "I don't think so, if you do that to me my wife will be in the HR office tomorrow morning and you will most likely lose your job." *Id*. Ms. Hooper then left the room.

Mr. Nelson wrote HR in that email that he immediately reported to his manager Michael Cummins about this incident, asking to lift his shirt to show his nipples and asking Mr. Cummins to interview Mr. Zyskowski as a witness. *Id*. Mr. Cummins allegedly refused to look at Mr. Nelson's nipples or to interview Mr. Zyskowski and told Mr. Nelson two days later that he was not going to talk with Ms. Hooper or HR about the incident. *Id*.

On December 16, 2016, there was some kind of incident between Mr. Nelson and Michele Hooper. Mr. Nelson's characterization of this incident in a June 14, 2017, email to HR is as follows, written in the third person:

> Mr. Nelson saw Michele Hooper vacuuming around her work area as she normally did before going home. Mr. Nelson noticed Michele Hooper had walked 18' across the Fab Area to vacuum next to him (Never before or after has Michele Hooper done this). Mr. Nelson proceeded to lean over his work station to finish potting the last inserts…. Suddenly, Mr. Nelson felt a hard object

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 2

being shoved up his rectum with unbearable force (He was wearing loose fitting basketball shorts to work that day). Mr. Nelson let out a loud piercing yell as he was going backwards very fast, hyperextending his back and came down on his right foot extended out and crooked. Mr. Nelson looked at Michele Hooper holding the vacuum hose with the 2' extension in both of her hands yelling "Did You See what I Did to Him, Did You See What I Did To Him) [sic]. Mr. Nelson at this point in time was in so much pain he told Michele Hooper, "TO GET THE HELL AWAY FROM ME NOW." Boeing employee Michele Hooper put the vacuum hose away, took her backpack and left the building. Mr. Nelson in pain walked down to his team lead's office where he found him – Bradley Lovell and told him what had just happen [sic]. Bradley said he heard Mr. Nelson's yell all the way to his desk.

Dkt. #31-5.

On December 19, 2016, Nelson sought medical treatment at Boeing for the incident. Nelson Dep. at 137:23-140:15; Dkt. #31-2. Physician/provider notes from this visit indicates that Mr. Nelson presented with "right low back pain…. Associated with his reaction to having a female co-worker 'goose' him with the wand end of a hose at work on 12/16/16 as he was leaning over a work table to finish potting an insert." Dkt. #31-2 at 3.

Mr. Nelson reported this incident to HR several months later in June of 2017, along with the first incident. Nelson's reports were sent to Boeing's EEO department, MacKenzie Watson was assigned as investigator. Dkt. #33 ("Watson Decl.") ¶¶ 2-3).

Ms. Watson met with Mr. Nelson on June 19, 2017, and he signed a statement after their discussion. Nelson Dep. at 173:3-18; Dkt. #31-6. In his statement, Mr. Nelson: (1) identified Mr. Zyskowski as the only witness to the alleged nipple twisting incident with Ms. Hooper in November 2016; and (2) identified Mr. Lovell as the only person in his area, other than himself and Ms. Hooper, when the alleged vacuum hose incident occurred on December 16, 2016. Dkt. #31-6. Mr. Nelson stated that, although the vacuum hose was on the outside of his shorts, Ms. Hooper was able to insert the hose about an inch or so into his rectum. *Id*.

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 3

After her initial meeting with Mr. Nelson, Ms. Watson interviewed eight other witnesses—including Hooper, Zyskowski, Lovell, and Cummins—and took their statements. Dkt. #31-7, ("Watson Dep.") at 21:1-22:10.

On June 20, 2017, Mr. Zyskowski gave Ms. Watson a statement. Watson Dep. at 37:2-17; Watson Decl. at ¶ 4. Mr. Zyskowski's statement indicated that he "can't recall ever seeing Michelle [sic] Hooper approach Mitchell Nelson and grab his nipples and twist them," and that "I would be lying if I told you I saw any physical touching between them at any time because I didn't." Dkt. #31-8 at 2; *see also* Dkt. #31-9. However, Mr. Zyskowski also stated that "I do remember an incident where Hooper was saying something and she turned to me and I told her that my wife wouldn't appreciate that but I don't recall the whole incident that led me to tell her that." Dkt. #31-8 at 2.

The next day, Ms. Watson took a statement from Mr. Lovell, including the following: "I did not witness Hooper stick a hose up his butt and I have never witnessed Hooper make any kind of physical contact with Nelson . . . . I don't remember Nelson yelling out in pain, but he yells all the time so if he did it wouldn't be out of the ordinary." Dkt. #31-10.

On July 7, 2017, Ms. Watson took a statement from Michael Cummins. Dkt. #31-13. Essentially, Mr. Cummins says he was never told about the nipple twisting incident, but that he was told by Mr. Nelson about the vacuum wand incident. Mr. Nelson then talked to Ms. Hooper, believed her when she said she accidentally bumped into him while vacuuming, and "didn't bring HR in because I figured she bumped him and he was exaggerating." *Id*. at 2.

On July 10, 2017, Ms. Watson took a statement from Michele Hooper. Watson Decl. ¶ 6. Hooper stated:

> I never twisted Nelson's nipples. I would never touch him like that.
> I would never do that to anyone. He is lying. . . . At the end of my

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 4

shift on December 16, 2017 I was vacuuming like I do every day… Nelson was running around his table and he crossed paths with me and bumped into me and the flexible part of the vacuum hose. My back was to him when he bumped into me so I have no idea what he was doing prior and I didn't see him coming and when he bumped into me I said "I am sorry" and he said "ow my lower back." I had the hard part of the vacuum hose with the extender pointed down in front of me which was away from Nelson. . . . It isn't possible that I shoved a vacuum hose up his ass.

Dkt. #31-11 at 2.

Michele Hooper also accused Mr. Nelson of violating Boeing's sexual harassment policy, stating in her declaration, "Nelson has talked about his 11 inch cock for years and has said 'it's sooooo big.' . . . Nelson has bragged to Gary Hedstrom and Bunckleman [sic] about when he had sex with his wife he made her bleed." *Id*.

That same day, Ms. Watson took a statement from the health care provider who saw Mr. Nelson on December 19, 2016. That care provider stated "[h]e told me that a female coworker jokingly hit him on the butt with a vacuum hose and it startled him and caused him to aggravate his back and knee. . . . I don't remember him ever saying she had inserted the hose into his rectum." Dkt. #31-14 at 2.

On or about July 11, 2017, Ms. Watson took a statement from Nicole Bunkelman, in which she corroborated Ms. Hooper's allegations: "[Nelson] told me on multiple occasions that he has a 11 ¾ inches long penis and that he goes for hours and makes his wife bleed when he has sex with her." Dkt. #31-12.

Ms. Watson followed up with Mr. Nelson on July 12, 2017. Nelson Dep. at 180:22-181:13. Mr. Nelson signed a statement admitting that he had "jok[ed] about how big I am" with coworkers, that he had said "11 inches or 10 inches," and that "I said one time that my wife and

I were having sex, maybe without lubrication, and she had to go to the doctor because she was bleeding." Dkt. #31-15.

During the course of the investigation, Ms. Watson collected statements from coworker witnesses who indicated that Mr. Nelson often exaggerates, talks "bullshit," or "is full of shit." *See* Dkt. #30 at 9 (citing witness statements above).

On July 24, 2017, Ms. Watson issued a sixteen-page report that summarized the evidence she reviewed and her findings. Dkt. #31-20. In her report, Watson concluded there was no evidence to substantiate Mr. Nelson's claims of sexual assault. *See id.* In addition, Ms. Watson concluded that Mr. Nelson discussing his penis and the fact that his wife had bled after sex had violated Boeing Procedure PRO-4332 ("Workplace and Sexual Harassment"), which provides, in part, that "[e]xamples of conduct that may violate this procedure include, but are not limited to the following: . . . sexually explicit language." *Id.*; *see* Dkt. #31-21 at 4-5 (Boeing PRO-4332)). Ms. Watson concluded that Michael Cummins' failure to report Mr. Nelson's allegations to EEO in December 2016 violated Boeing PRO-4332. Dkt. #31-20 at 12. Ms. Watson's supervisor, David Wuerch, reviewed and approved Watson's investigative report and conclusions. Watson Dep. at 8:14-16; Dkt. #31-22 ("Wuerch Dep.") at 16:1-9.

Boeing then issued written warnings (also called Corrective Action Memos or "CAMs") to Nelson and Cummins. Watson Dep. at 15:8-16. Boeing issued Mr. Cummins a CAM for his failure to report Nelson's allegation to the HR or EEO department. Watson Dep. at 15:17-25; Watson Decl. ¶¶ 16-17. Mr. Nelson's CAM stated:

> It has been determined that you made offensive comments that were sexual in nature while in the workplace. The Company deems your actions to be unacceptable and in violation of the Company's expectations as set forth in PRO-1909, Administration of Employee Corrective Action and PRO-4332, Workplace and Sexual Harassment.

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 6

> …
>
> You are required to complete Gender Sensitivity Training… and must register for it within thirty (30) days. Further violations or retaliation by actions, word, or behavior, will result in a review for additional employee corrective action, up to and including discharge.

Dkt. #31-23 at 2. Although violations of PRO-4332 "usually result in time off from work," Boeing did not require Mr. Nelson to take time off from work. *See* Nelson Dep. at 231:8-24.

Mr. Nelson filed this action on February 16, 2018, against Defendant Boeing and Defendant Michael Cummins alleging violations of Title VII of the Civil Rights Act. Dkt. #1.

Mr. Nelson submits in this case an affidavit dated August 14, 2017, from "Tampatha" Mitchell, a coworker, indicating that she heard "Michelle" come out of the break room and blurt out "I just pinched and twisted Mitches [sic] nipples then walked up to Norm and said your [sic] next." Dkt. #35-19.[1] Ms. Mitchell does not indicate when she heard this statement. Mr. Nelson also submits a declaration of Robert Sampson suggesting that Mr. Cummins frequently lies, has also made sexual comments in the workplace, and generally suggesting that Boeing threatens witnesses and silences the truth. Dkt. #35-22.

## II. DISCUSSION

### A. Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Material facts are those which might affect the outcome of the suit under governing law. *Anderson*, 477 U.S. at

---

[1] Although the declaration says "my name is Tampatha," Nelson testified at his deposition that he wrote the declaration and likely mistyped her name, which he believes is Tabitha, but she was still willing to sign it. Dkt. #38-1 at 255:17-256:21.

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 7

248. In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)).

On a motion for summary judgment, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Sullivan v. U.S. Dep't of the Navy*, 365 F.3d 827, 832 (9th Cir. 2004). The Court must draw all reasonable inferences in favor of the non-moving party. *See O'Melveny & Meyers*, 969 F.2d at 747, *rev'd on other grounds*, 512 U.S. 79 (1994). However, the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

**B. Analysis**

**1. Title VII Claim of Discrimination**

Title VII prohibits discrimination against an employee or an applicant for employment on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e–2(a). To prevail on a Title VII discrimination claim for disparate treatment, a plaintiff must establish a *prima facie* case by presenting evidence that "gives rise to an inference of unlawful discrimination." *Cordova v. State Farm Ins. Co.*, 124 F.3d 1145, 1148 (9th Cir. 1997); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). A plaintiff can establish a *prima facie* case through direct evidence or through circumstantial evidence via the burden shifting framework set forth in *McDonnell Douglas*. *Metayer v Chassman*, 504 F.3d 919, 931 (9th Cir. 2007).

Under McDonnell Douglas, the plaintiff carries the initial burden of establishing a prima facie case. *McDonnell Douglas*, 411 U.S. at 802. To do so, the plaintiff must show that (1) he

belongs to a protected class; (2) he performed his job satisfactorily; (3) he experienced an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination. *Hawn v. Executive Mgmt., Inc.*, 615 F.3d 1151, 1156 (9th Cir. 2010). If the plaintiff is able to meet this test, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its action. Once the employer does so, the plaintiff is required to introduce evidence sufficient to "raise a triable issue of material fact" to show that the employer's explanation is a pretext for intentional discrimination. *Id.* at 1155.

Boeing first questions whether Mr. Nelson can point to suffering any qualifying adverse employment action. "For claims of disparate treatment under Title VII, an adverse employment action is one that 'materially affects the compensation, terms, conditions, or privileges of employment.'" *Campbell v. Hawaii Dep't of Educ.*, 892 F.3d 1005, 1012 (9th Cir. 2018).

It is undisputed that Mr. Nelson retains the same job title as the one he held before the above incidents with Ms. Hooper. He has not had any change to his benefits or pay. Instead, Mr. Nelson alleges the following adverse employment actions: intentional mishandling of his investigation, intimidation, bad-mouthing, involuntary transfer from his work station, assignment of disproportionate work, being given a Corrective Action Memo ("CAM"), threats of further discipline, and being put on a "Zero Tolerance List." *See* Dkt. #1.[2]

Boeing argues that the CAM is "insufficient to constitute an adverse employment action because it did not significantly change his employment status and was based on his admitted

---

[2] The Court notes that Mr. Nelson's Complaint repeatedly refers to "discriminatory-retaliatory" treatment. *See, e.g.*, Dkt. #1 at 3. Although Mr. Nelson is conflating two separate claims, which have different legal standards, in an abundance of caution the Court will consider all allegedly adverse employment actions under both his discrimination and retaliation claims.

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 9

improper behavior. Dkt. #30 at 15 (citing *Sanchez v. California*, 90 F. Supp. 3d 1036, 1056-57 (E.D. Cal. 2015) (finding that "[w]ritten warnings and performance improvement plans are not adverse employment actions where they do not materially affect the terms and conditions of employment"); *Cozzi v. Cty. of Marin*, 787 F. Supp. 2d 1047, 1061 (N.D. Cal. 2011) (finding that written warning could not constitute negative employment action because it did not result in a significant change in employment status, and was based on admitted behavior)).

The Court is troubled by Boeing's argument, based on citation to *Sanchez* and *Cozzi*, *supra*, that a CAM or similar written warning can never constitute an adverse employment action. Here, the CAM in question included a requirement that Mr. Nelson complete gender sensitivity training by a certain deadline. Interpreted in the light most favorable to Mr. Nelson, the Court reads this as saying he could be fired for failing to attend this training. This strikes the Court as placing an additional term or condition on Mr. Nelson's employment. The CAM also states that further violations will result in a review for "additional corrective action, up to and including discharge." This could easily be seen by a fact-finder as changing Mr. Nelson's employment status, bringing him one step closer to termination. The Court notes that the written warnings in *Cozzi* did not require training by a set deadline but did threaten termination for additional violations. *See* 787 F. Supp. 2d at 1054. *Sanchez* similarly involved written warnings that did not require training by a deadline but could be seen as the first step in a disciplinary process. 90 F. Supp. 3d at 1056-57. In any event, Boeing is correct that the CAM here was explicitly based on Mr. Nelson's behavior unrelated to the two incidents with Ms. Hooper. Even if Mr. Nelson were to make a prima facie case of discrimination, Boeing would have a legitimate basis for this adverse employment action, and Mr. Nelson has been unable to introduce evidence sufficient to raise a triable issue of material fact to show that the Boeing's

explanation for why it issued this CAM is actually a pretext for intentional discrimination against Mr. Nelson based on his gender. Mr. Nelson's arguments to the contrary are purely speculative.

The Court's decision need not turn on whether the CAM is an adverse employment action. Boeing also argues that "even if the investigation and resulting written warning could constitute an adverse employment action here… Nelson cannot prevail because he has no evidence that any similarly situated woman was treated differently." Dkt. #30 at 15. This is required for Mr. Nelson to establish a prima-facie case and survive summary judgment. Boeing points to the declaration of Ms. Watson, the investigator, who states that she conducted her investigation in the same manner she would for a complaint made by a female employee. *Id*.

Although Ms. Watson's word alone is thin evidence, Mr. Nelson does not present any evidence to rebut this argument. His belief that he was treated differently than a female employee in how the investigation was *conducted* is entirely unsupported by, *e.g.*, explicitly discriminatory statements or references to investigations from claims brought by female comparators. Mr. Nelson relies on pure speculation, presented in his briefing in a jumbled narrative form. If he is instead arguing that the *results* of the investigation were different because he is a man, the Court finds that no reasonable juror could find that Boeing's conclusions from the investigation were discriminatory based on this record, given that every known witness to the incidents in question flatly denied Mr. Nelson's allegations of sexual assault, and given that Mr. Nelson's CAM was based on his own admitted sexually explicit discussions of his penis and sex with his wife. The Court is persuaded by the analysis in the cases cited by Boeing where the court dismissed claims where the plaintiff employee failed to identify comparators who were treated more favorably. *See* Dkt. #30 at 16 – 17 (citing *Osborne*

*v. Boeing Co.*, No. 15-0223, 2015 WL 4430985, at *3 (W.D. Wash. 2015); *Salas v. Indep. Elec. Contractors Inc.*, Nos. 11-1748, 12-0277, 2013 WL 1898249, at *8 (W.D. Wash. May 7, 2013); and *Stallworth v. Seattle Sch. Dist. No. 1*, No. 09-0203, 2013 WL 822400, at *3 (W.D. Wash. Mar. 6, 2013)). Given all of the above, the Court dismisses Mr. Nelson's claims of discrimination in violation of Title VII against all Defendants.

### 2. Title VII Claim of Hostile Work Environment

To establish a hostile work environment claim, the plaintiff must show: 1) he was subjected to verbal or physical conduct because of his race, color, or gender; 2) the conduct was unwelcome; and 3) the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment. *See, e.g., Ellison v. Brady*, 924 F.2d 872, 875-76 (9th Cir. 1991); *Hosea v. Donley*, 584 Fed. App'x 608, 611 (9th Cir. 2014) (citation omitted); *see also Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 20 (1993); *Vasquez v. County of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2004).

Although neither party addresses it in briefing, Mr. Nelson does allege in his Complaint that he was subjected to a "Hostile work Environment" where "Boeing Management and their surrogates bad-talked Mr. Nelson to Mr. Nelson's co-workers…" Dkt. #1 at 8. However, the Court has reviewed the pleading, the briefing, and the remainder of the record and concludes that Mr. Nelson has failed to plead that the alleged hostile work environment was *because of* his gender, failed to make a sufficient showing at summary judgment of the same, and failed to make a sufficient showing that the bad-talking was sufficiently severe or pervasive to alter the conditions of his employment. This claim, to the extent that it is even brought by Mr. Nelson, is dismissed.

### 3. Title VII Claim of Retaliation

A plaintiff can establish a prima facie case of retaliation under Title VII by showing that: 1) he engaged in a protected activity; 2) he suffered an adverse employment action; and 3) there was a causal link between the protected activity and the adverse employment action. *Ray v. Henderson*, 217 F.3d 1234 (9th Cir. 2000). "The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006). A "plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id*. at 68 (citations omitted).

Mr. Nelson argues that many if not all the same actions above that were discriminatory were also in retaliation for his sexual assault/harassment claim against Ms. Hooper. In his deposition, Mr. Nelson alleged the following retaliatory actions: (1) his workload increased when he was told by Michael Cummins that he had to finish double the number of panels he normally needed to complete (Nelson Dep. at 211:6-24); (2) he was moved to another area (from working on the 777 airplane to the 787 airplane) (*Id*. at 217:11-22); (3) he was told by his new manager in the 787 area, Bruce Tucker, that he was put on a "zero tolerance list" (*Id*. at 221:21-223:22); (4) he received a CAM for his comments about his penis size and having sex with his wife (*Id*. at 225:6-9); and (5) he was "bad-mouthed" by people saying negative things about him and being coached to make false statements to the investigator (*Id*. at 235:15-20).

Boeing argues these allegations cannot constitute adverse employment actions because there is evidence that the increase in workload applied to Mr. Nelson's entire group and was set before Mr. Nelson filed his HR complaint, *see* Dkt. #30 at 21-22; because Mr. Nelson has not

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 13

shown that his transfer from working on the 777 to the 787 aircraft resulted in a change in his working conditions and because such transfers were routine, *id.* at 23 (citing *Sillars v. Nevada*, 385 F. App'x 669, 671 (9th Cir. 2010); because the CAM and threat of zero tolerance would not dissuade a reasonable worker from making a charge of discrimination and were based on a legitimate, non-retaliatory reasons; and because Mr. Nelson has presented no evidence, just his own vague speculation, as to the alleged bad-mouthing. The Court agrees with this analysis.

In Response, Mr. Nelson challenges these arguments based almost entirely on his own speculation. As the Court believes only the CAM comes close to an adverse employment action, the Court will focus on Mr. Nelson's explanations for that action. He states "[i]t was never me but co-workers who were making jokes about my penis something that was uncomfortable for me and that I put a stop too [sic] and in no job I have ever worked at my entire life have I ever been previously in that situation." Dkt. #35 at 14. Mr. Nelson maintains that "[t]hese quick surfacing complaints" only came about after he brought his own complaint to HR, and that the delay itself was suspicious. *Id*. Mr. Nelson argues that Ms. Watson erased the context of his statement and put a false context in its place. *Id.*

Although his coworkers may have first reported his sexually explicit comments after being prompted by an HR investigator, Mr. Nelson's CAM is based on admitted behavior that, given the statements provided to Boeing by two witnesses and Mr. Nelson himself, clearly violated Boeing's policy on sexually explicit language in the workplace. Further, the standard for an adverse employment action in a Title VII retaliation claim is different than in a discrimination claim. Although this CAM might have changed the terms of conditions of Mr. Nelson's employment, as stated above, the Court finds that it did not produce an injury or harm and Mr. Nelson has failed to make a "sufficient showing," *see Celotex*, *supra*, that his CAM

would have dissuaded a reasonable worker from making the charge of discrimination.[3]  Taking the facts in the light most favorable to Mr. Nelson, the remainder of the employment actions cited by Mr. Nelson also are not adverse in the sense that they would have dissuaded a reasonable employee from making or supporting a charge of discrimination, and Boeing has demonstrated a legitimate purpose for each, except the bad-mouthing.  Although Mr. Nelson fails to present sufficient evidence of bad-mouthing and coaching to make false statements, the Court notes that his allegations of generic bad-mouthing cannot constitute a basis for a retaliation claim.  *See Hardage v. CBS Broad. Inc.*, 427 F.3d 1177, 1189 (9th Cir. 2005), *amended by* 433 F.3d 672 (9th Cir. 2006), and 436 F.3d 1050 (9th Cir. 2006).  Without an adverse employment action, Mr. Nelson's retaliation claims fail.

### III.     CONCLUSION

Having reviewed the relevant briefing, attached declarations, and the remainder of the record, the Court hereby finds and ORDERS that Defendant Boeing Company's Motion for Summary Judgment (Dkt. #30) is GRANTED.  All of Plaintiff's claims are DISMISSED.  This case is CLOSED.

DATED this 12th day of April 2019.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

---

[3] The Court notes Mr. Nelson's statement in his brief: "I have a lot of Heavy evidence that demonstrates exactly what really goes on at Boeing to present to the Honorable Court at trial. In selecting what out of everything to respond to what Boeing wrote about me saying I have no evidence and no case I don't want to bombard this motion with an overload of attachments in an inefficient manner but I also do not want to provide so little that Boeing can say I haven't presented any evidence to support my claims, I want to demonstrate that I AM telling the Truth and I do have real evidence that supports my claims and give my Word to the to the [sic] Honorable Court in good faith that there is much more behind what I am presenting just for this Motion."  The Court cannot consider unpresented evidence and must make its determination based on the record before it.

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 15